**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

vs.                                                  Case No.  3:13-cr-58-J-99MMH-JRK

RICHARD DALE BROOKS
_____/

### REPORT AND RECOMMENDATION[1]

### I.  Status/Summary of Recommendation

This cause is before the Court on Defendant Brooks' Motion to Suppress (Doc. No.

39; "Motion"), filed June 10, 2013, to which the Government responded in opposition on June

28, 2013, see United States' Response in Opposition to Defendant's Motion to Suppress

(Doc. No. 53; "Response").  After the filing of the Government's Response, on July 1, 2013,

Defendant filed a Notice of Supplemental Authority (Doc. No. 55).  On July 3, 2013, an

evidentiary hearing regarding the Motion was held before the undersigned.  See Minute

Entry (Doc. No. 57); see also Transcript (Doc. No. 65; "Tr.").  Argument on the Motion was

held on July 18, 2013.  See Minute Entry (Doc. No. 69).[2]

Also on July 18, 2013, Defendant filed a Supplement to the Motion (Doc. No. 68) to

which he attached objections his attorney filed to a Report and Recommendation on a

motion to suppress in an unrelated case in this Court, United States v. Arnold Bernard

---

[1]        Within fourteen (14) days after service of this document, specific, written objections may be
filed in accordance with 28 U.S.C. § 636, Rule 59, Federal Rules of Criminal Procedure, and Rule 6.02(a), Local
Rules, United States District Court, Middle District of Florida.  Failure to file a timely objection waives a party's
right to review.  Fed. R. Crim. P. 59.

[2]        The July 18, 2013 hearing has not been transcribed by a court reporter.

Conrad, Jr., 3:12-cr-134-J-34TEM ("Conrad"). Although the Conrad case is unrelated to the instant case, the facts forming the basis for the motion to suppress in Conrad are very similar to the facts upon which Defendant relies in bringing the instant Motion (including one of the law enforcement officers involved, the manner in which law enforcement investigated the respective defendants, the affidavit submitted in support of obtaining a search warrant for each defendant, and the search warrant ultimately issued for each defendant). The Conrad Report and Recommendation, authored by the Honorable Thomas E. Morris, United States Magistrate Judge, recommended denying the motion to suppress in that case. See Conrad, Report and Recommendation (Doc. No. 85), entered May 14, 2013. After the instant Motion was fully briefed, this Court in Conrad overruled Defendant's objections, adopted the Report and Recommendation as the opinion of the Court, and denied the motion to suppress in its entirety. See Conrad, Order (Doc. No. 97), entered August 7, 2013.

The instant Motion seeks to suppress "any and all fruits of the [August 2, 2012] execution of a search warrant for Defendant's computers and hard drives." Motion at 1. The search warrant was issued on August 1, 2012 by the Honorable Thomas M. Beverly, Circuit Judge of the Fourth Judicial Circuit in and for Duval County, Florida. Id. at Ex. 2. Defendant argues the warrant was overbroad and lacked particularity, id. at 2-3, 19-39, the warrant was executed in an unreasonable manner, id. at 1-2, 13-19, and the allegedly defective warrant cannot be saved by the good faith exception articulated in United States v. Leon, 468 U.S. 897 (1984), because law enforcement did not act in good faith in executing it, Motion at 3-4, 39-41.

The undersigned having considered the Motion, the Response, all accompanying documents, the evidence, the argument of counsel, and the file, recommends that the Motion be denied for the reasons stated herein.

## II. Background

On March 27, 2013, a federal grand jury returned a six-count indictment against Defendant charging him with the following crimes: knowingly receiving a visual depiction using a means and facility of interstate and foreign commerce, the production of which involved the use of minors engaging in sexually explicit conduct, which visual depiction was of such conduct, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1) (counts I-V); and knowingly transporting and shipping, using a means and facility of interstate and foreign commerce, visual depictions, the production of which involved the use of a minor engaging in sexually explicit conduct, which visual depictions are of such conduct, in violation of 18 U.S.C. §§ 2252(a)(1)(B) and 2252(b)(1) (count VI). Indictment (Doc. No. 1) at 1-4. The crimes are alleged to have occurred in October 2005, September 2011, November 2011, May 2012, and June 2012. Id. On April 3, 2013, Defendant was arrested on the indictment and made his initial appearance. See Minute Entry (Doc. No. 7). Defendant was arraigned on April 8, 2013, and he pleaded not guilty. See Minute Entry (Doc. No. 17).

Thereafter, the Motion, Response, and supplemental documents were filed, the evidentiary hearing was held, and the Court heard argument on the Motion. The Motion is ripe for decision.

### III.  Summary of Evidence

At the evidentiary hearing, the Government called one witness: Jacksonville Sheriff's Office ("JSO") Detective Gary M. Snyder ("Detective Snyder").[3]  The Government also submitted two exhibits into evidence: the application and affidavit (Gov.'s Ex. 1); and the search warrant, including a return and an inventory (Gov.'s Ex. 2).  Defendant called one witness: JSO Detective Anthony R. Durfee ("Detective Durfee").[4]  Defendant also submitted three exhibits into evidence: a property storage card (Def.'s Ex. 1); a JSO computer forensic examination report (Def.'s Ex. 2); and some JSO reports (Def.'s Ex. 3).  The facts are largely undisputed and are summarized below.

On August 1, 2012, Detectives Snyder and Durfee submitted to Judge Beverly a co-authored affidavit in support of an application for a search warrant for a residence located at 4263 Losco Road, Apartment Number 626, Jacksonville, Florida 32257.  Tr. at 10, 12; Gov's Ex. 1 at 1.  According to the affidavit, Detectives Snyder and Durfee determined on May 25, 2012 "that a computer located in Duval County, Florida, was downloading and sharing child pornography" from approximately April 23, 2012 to approximately May 25, 2012

---

[3]    Detective Snyder has been employed by JSO for seventeen years.  Tr. at 7.  From 2009 through the date of the hearing, he was on a task force that investigates internet crimes against children.  Tr. at 7-8.  He is cross-designated as a U.S. Customs Officer.  Tr. at 8.  He confirmed that he has "served as the affiant of a number of search warrants . . . over the last four years . . . ."  Tr. at 9-10.

[4]    Detective Durfee is the case agent in this matter.  Tr. at 16.

via the Internet using a peer-to-peer ("P2P") file-sharing program called Gnutella.[5]  Gov.'s Ex. 1 at 2, 11.

The affidavit describes in detail the tools employed by Detectives Snyder and Durfee to determine that a computer at the residence to be searched was being used to download and share child pornography.  Id. at 4-14.  When employing these tools, law enforcement officers largely rely on a file recognition method called "Secure Hash Algorithm Version 1," abbreviated as SHA-1.  Id. at 4.  Every file has a specific and unique SHA-1 value or signature that is "similar to a fingerprint for the file."  Id.  "[A]ny change to a file, however small, will change the associated SHA-1 signature."  Id.  Using the SHA-1 signature, law enforcement officers can identify files containing child pornography.  Id. at 5.  They do this by accessing "a database list of unique SHA-1 values that are known to law enforcement to correspond to specific images of children being sexually exploited."[6]  Id.  "Since the SHA-1 assigned to any file or image is unique, merely locating a file or image by the SHA-1 assigned, without looking at the file or opening it, and irrespective of the file name or title, allows [law enforcement officers] to identify the content" of any file that has previously been identified by law enforcement as containing child pornography.  Id.

---

[5]      Detectives Snyder and Durfee explained in the affidavit that Gnutella requires a user to download software "that facilitates the trading of files and images."  Gov.'s Ex. 1 at 6.  "The software, when installed, allows the user to search for pictures, movies and other digital files by entering specific text, which the computer user must intentionally type as search terms."  Id.  The search terms are "sent out on the network to other users in order to locate files with matching text to that input by the computer user."  Id.  The user then receives a list of files available for download, and the user can choose to download one or more files.  Id.  A file is not available for download unless it is in a "specific folder on the user's computer, often referred to as the 'shared' or 'saved' folder."  Id. at 7.

[6]      The National Center for Missing and Exploited Children and/or the Internet Crimes Against Children Task Forces catalogue SHA-1 values in the database for files containing child pornography.  Gov.'s Ex. 1 at 5.

Law enforcement officers have access to certain software that captures "publicly available advertisements or offers to share files through the Gnutella network" from various computer users. Id. at 8. "The software runs on the Gnutella network to capture the SHA-1 value for any image or file that contains known or suspected images of child pornography[.]" Id. at 9. When an individual enters a search term on the Gnutella network, the search result provides the following information: "the titles of the files located, . . . the SHA-1 value for the file and the Internet Protocol (['IP[']) address of the computer offering that file for others to download." Id. at 7. The law enforcement software "documents the related IP address for that computer location[.]" Id. at 9. The software is "automated," meaning it runs constantly and allows "law enforcement . . . to gather criminal data at times when law enforcement are not on-duty, but times which are commonly used by individuals who seek out child pornography on the Internet." Id.

"To facilitate and organize the analysis of data gathered . . . , there is a compl[e]mentary law enforcement software program called the Child Protection System ('CPS')." Id. Law enforcement officers can use CPS "to view and organize the data previously gathered by law enforcement so as to localize a target." Id. at 9-10. CPS identifies "the total number of times a particular computer(s) located at a particular IP address has been identified as advertising files of child pornography based on the identified SHA-1 value." Id. at 10. CPS also allows law enforcement officers to determine "the specific date and time the child pornography was detected along with the state and city where the computer would likely be located." Id.

The affidavit states that Detectives Snyder and Durfee used all of these tools to view a list of approximately 385 files that were identified by the law enforcement software "to be available for downloading from the computer located at IP address 67.190.231.206 between April 23, 2012 and May 25, 2012."[7] Id. at 11. "[M]any of the 385 files were titled in a manner . . . which suggest the content includes sexual abuse or sexual exploitation in some form with children." Id. The data provided by the law enforcement software indicated that 72 of the files had SHA-1 values that were designated by law enforcement officers "as suspected child pornography." Id.

Detectives Snyder and Durfee selected three files from the list that were offered for download from IP address 67.190.231.206 and confirmed that the files depicted child pornography. Id. at 13-14. The files had associated dates of May 7, 2012 and May 8, 2012. Id. The Detectives then conducted an Internet search and determined that IP address 67.190.231.206 "is owned [by] and issued to Comcast Cable Communications [("Comcast")]." Id. at 14.

The affidavit goes on to state that Detective Snyder issued a Summons on May 30, 2012 via the U.S. Customs Service to Comcast. Id. The Summons requested the identification of the Internet subscriber using the IP address 67.190.231.206 on May 8, 2012 "from 1:51 GMT to 14:01 GMT[.]" Id. (emphasis omitted). On June 6, 2012, Comcast responded, indicating that the IP address was associated with an individual named "Richard

---

[7]    Detective Durfee was not certified at the time to use the CPS program, but Detective Snyder was certified. Tr. at 36. Because Detective Snyder was certified, he used the program. Tr. at 36.

Brooks" and located at "4263 Losco Rd, Apt. #626, Jacksonville, FL 32257[.]" Id. (emphasis omitted).

After submitting the affidavit on August 1, 2012 to Judge Beverly containing, inter alia, the above information, the Detectives obtained the search warrant from Judge Beverly on that same date.[8] Tr. at 12; see Gov.'s Ex. 2. The search warrant stated there was "probable cause that a computer or other digital device capable of accessing the internet by means of service provided at or through [the above-listed address] was knowingly used as an instrumentality of" the crimes of possession, creation, or promotion of child pornography and contained evidence of the crimes. Gov.'s Ex. 2 at 2. The warrant authorized the seizure and off-site search and analysis of the following items:

> 1. Computer hardware to include any and all computer equipment used to collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical, or similar computer impulses or data. Hardware includes (but is not limited to) any data-processing devises (such as central processing units, personal computers to include "laptop" or "notebook" or "pocket" computers); internal and peripheral storage devices (such as fixed disks, external hard disks, floppy disk drives and diskettes, flash drives, thumb drives, tape drives and tapes, optical storage devices, and other electronic media devices).
>
> 2. Computer input and output devices to include but not limited to keyboards, mice, scanners, printers, monitors, network communication devices, modems and external or connected devices used for accessing computer storage media.
>
> 3. Computer storage media and the digital content to include but not limited to floppy disks, flash drives, thumb drives, hard drives, tapes, DVD disks, CD-ROM disks or other magnetic, optical or mechanical storage which can be accessed by computers to store or retrieve data or images of child pornography.

---

[8] Prior to submitting the affidavit to Judge Beverly, the Detectives took it to an Assistant State Attorney (they could not recall to whom), who reviewed it. Tr. at 31-32, 53. The Detectives then took the affidavit to Judge Beverly, who reviewed it for approximately twenty-five to thirty minutes before issuing the search warrant. Tr. at 32-34, 53.

4. Computer software and application software installation and operation media.

5. Computer software, hardware or data related to the sharing of Internet access over wired or wireless networks allowing multiple persons to appear on the Internet from the same IP address.

6. Manuals and other documents (whether digital or written) which describe operation of items or software seized.

7. Items containing or displaying passwords, access codes, usernames or other identifiers necessary to examine or operate items, software or information seized.

8. Correspondence or other documents (whether digital or written) pertaining to the possession, receipt, origin or distribution of images involving the sexual exploitation of children.

9. Correspondence or other documents (whether digital or written) exhibiting an interest or the intent to sexually exploit children and to identify a particular user of the materials or contraband and any data or text which tends to prove the identity of the computer user at a time that may be relevant to prove the possession or distribution of child pornography or the sexual exploitation of children. Items may include, but are not limited to, pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, and tape recordings, "trophies," grooming aids or other items demonstrating an interest in the exploitation of children.

10. Items that would tend to establish ownership or use of computers and ownership or use of any Internet service accounts accessed to obtain child pornography to include credit card bills, telephone bills, correspondence and other identification documents.

11. Items that would tend to show dominion and control of the property or premises searched, to include utility bills, telephone bills, correspondence, rental agreements and other identification documents.

12. Data maintained on the computer, or computer related storage devices such as floppy diskettes, tape backups, computer printouts, and "zip" drive diskettes, in particular, data in the form of images and/or videos and any accompanying text associated with those images, and/or log files recording the transmission or storage of images, as they relate to violations of Florida law cited herein as related to the possession and distribution of child pornography.

Id. at 2-3.

The search warrant was executed the next day, August 2, 2012. Tr. at 15, 34, 47; Gov.'s Ex. 2 at 6. A copy of the affidavit was brought to the residence along with the warrant. Tr. at 13. Law enforcement officers seized four desktop computers, one laptop computer, one external hard drive, two digital cameras, ninety-one compact discs, and four compact discs "found in [a] car[.]" Gov.'s Ex. 2 at 5. Although the affidavit was brought to the scene, law enforcement officers only left Defendant with a copy of the warrant itself, including an inventory of items seized. Tr. at 48.

On about August 7, 2012, Detective Michael Boimer of JSO began a forensic examination of the computers and related items.[9] Tr. at 15-16, 34. The examination was completed on or about December 18, 2012. Tr. at 50-51 (parties stipulating to same); see also Tr. at 16, 34-36, 62. The examination revealed that three of the computers and the laptop contained contraband. Tr. at 43-44. The digital cameras and the external hard drive did not contain contraband. Tr. at 44-45. One compact disc and three "DVD disks" contained thirteen total videos of contraband; the rest did not. Tr. at 56-57; see also Tr. at 45.

During the evidentiary hearing on the instant Motion, the parties stipulated that the following chronology of events occurred after the execution of the warrant:[10]

> On August 2, 2012, the Warrant was executed at defendant's residence. On March 27, 2013, defendant was indicted in this case, and he was arrested on April 3, 2013 in Cocoa, Florida. During the 8-month period between the execution of the Warrant and defendant's arrest, neither defendant nor counsel nor any other interested persons ever made a request to either the Jacksonville

---

[9]    Detective Boimer is now retired. Tr. at 16.

[10]    This chronology is set forth in the Government's Response. Defendant stipulated to the accuracy of "the chronology, not the[] argumentative conclusions that are interspersed" in the chronology. Tr. at 51. Accordingly, the undersigned has attempted to remove any conclusions that may be deemed argumentative and that are otherwise not germane to the issues presented.

Sheriff's Office or the Department of Homeland Security to return any of the items seized.[11] Defense counsel entered an appearance on April 5, 2013, and received a copy of the indictment. Doc. 14. The indictment set forth in detail the items seized from defendant's residence that the United States intended to forfeit. Doc. 1 at 5. Discovery was provided to defendant on April 16, 2013, detailing the numerous images and video files containing child pornography found on various media seized from defendant's residence. See [Response at] Exhibit D.

Soon after defendant's arrest and appearance in court, counsel for the parties consulted regarding the United States' position on the return of seized property to defendant. Counsel for defendant advised that he was seeking return of all of the property and declined to limit his request to property that does not contain or consist of contraband. Doc. 29 at 2. Consequently, counsel for the United States advised defense counsel that she would oppose a motion seeking return of the property. Id.

On April 26, 2013, defendant filed his motion for return of seized property, Doc. 25, naming all of the property identified in the forfeiture count of the indictment, and claiming . . . that "the property seized pursuant to the Court's search warrant was lawfully possessed by Defendant." Id. at 2. . . . In his motion for return of property, defendant did not identify any noncontraband items. The United States filed a response opposing this motion on May 9, 2013, explaining, among other things, that defendant had [not] provide[d] any support as to his lawful possession of the property that contained files depicting minors engaging in sexually explicit conduct. Doc. 29. Counsel for the United States noted that the government was willing to return contraband free items to a designee of defendant who is not prohibited from possessing these items . . . . Id.

On May 16, 2013, this Court entered an order instructing the parties to confer and attempt to reach an agreement regarding which property, if any, could be returned to defendant or another suitable individual, and requiring the parties to file a joint notice by May 28, 2013, identifying the property still at issue. Doc. 30 at 1. Counsel for the parties conferred, and on May 24, 2013, the law enforcement agents returned two cameras, a notebook computer, and 4 CD/DVDs to counsel for defendant. See [Response at] Exhibit E. The parties also made arrangements to return an additional computer to defendant's designee. On May 28, 2013, the parties filed a joint notice so stating. Doc. 32. In the joint notice, defendant listed, for the first time, several specific items that he wanted to be returned. Id. at 1-2. In the notice, the Court was also advised that some of these listed items were unlabeled and were, in some instances, commingled with contraband. Id. at 2.

---

[11]     See also Tr. at 47-48 (Detective Snyder testifying to same).

On June 7, 2013, the Court issued an order directing the United States to return to defendant, or his designee, all property listed in the joint notice "that is not commingled with contraband and that can be located with Defendant's assistance." Doc. 36 at 2. On June 11, 2013, [a second counsel for the Government] filed a notice of appearance in this case. Doc. 41. On that same day, [the new Government] counsel contacted HSI Special Agent (SA) James Greenmun, who is also a computer forensic agent, and requested that he confer with counsel for defendant to make arrangements to provide defendant's non-contraband items in compliance with the Court's order. The [new Government counsel] also spoke with counsel for defendant and advised that the agents would provide non-contraband items to him if he provided a clean external hard disk drive. This conversation was cordial, and counsel agreed to do so.

On June 13, 2013, counsel for defendant mailed a clean external hard disk drive to HSI SA Greenmun that was received on June 17, 2013. On June 12, 2013, SA Greenmun spoke with counsel for defendant by telephone, and advised that he (Greenmun) was not comfortable providing defendant with copies of potentially pirated movies and music, and counsel agreed that such items should not be provided.[12] On June 17, 2013, SA Greenmun undertook the task of locating non-contraband items on defendant's media (personal photographs of his family, friends, and travel, together with loan documents, military documents, tax documents, and personal letters), and copying them onto the clean hard disk drive provided by defense counsel. On June 19, 2013, SA Greenmun delivered this disk drive containing these items to counsel's office in Jacksonville.[13] On June 26, 2013, defendant notified the Court that the noncontraband items that could reasonably be separated had been returned. On June 28, 2013, an additional non-contraband item was returned to defense counsel.

Response at 4-8; see Tr. at 49-51.[14]

## IV. Discussion

As previously summarized, Defendant argues the following: (1) the warrant was facially invalid because it lacked particularity and was overbroad, Motion at 2-3, 19-39; (2)

---

[12] Detective Durfee testified that it is impractical to separate potentially pirated material from other files on discs, so the ninety-one discs that did not contain child pornography have not been returned to Defendant. Tr. at 57. The discs are stored in the JSO property room. Tr. at 57, 60.

[13] See also Tr. at 61 (Detective Durfee testifying to same).

[14] Defendant's exhibits contain similar facts to those contained in the parties' stipulation. See Def.'s Exs. 1-3. The exhibits also contain other information that is not relevant to the issues presented (i.e., detailed results of the forensic examination and details of the investigation).

the warrant was executed in an unreasonable manner, id. at 1-2, 13-19; and (3) the evidence obtained pursuant to the warrant must be suppressed because law enforcement officers did not act in good faith, id. at 3-4, 39-41.

In Conrad (introduced in the Status section, supra), Detective Snyder submitted to a state circuit judge a very similar affidavit, describing an identical investigative technique (the use of the law enforcement software to capture a computer that was used to share or receive child pornography). The state circuit judge in Conrad issued a warrant that is almost identical to the warrant that was issued in the instant case. Nearly identical arguments for suppression were made and rejected in the Conrad case.[15] The undersigned has considered this case and its facts independently, but agrees with the ultimate conclusions of Judge Morris, adopted by this Court, in the Conrad case. Accordingly, the following analysis to some extent mirrors Judge Morris's analysis.

## A. Whether the Warrant was Facially Invalid Because it Lacked Particularity and was Overbroad

The Fourth Amendment requires warrants to "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The precise and clear words of the Fourth Amendment "reflect the determination of those who wrote the Bill of Rights that the people of this new Nation should forever 'be secure in their persons, houses, papers, and effects' from intrusion and seizure by officers acting under the unbridled authority of a general warrant." Stanford v. Texas, 379 U.S. 476, 509-10 (1965) (quoting U.S. Const. amend. IV).

Warrants that allow "'a general, exploratory rummaging in a person's belongings,' are prohibited by the requirement of a 'particular description' of the things to be seized." United

---

[15]     Counsel for Defendant in this case is counsel for the defendant in the Conrad case.

States v. Haimowitz, 706 F.2d 1549, 1558 (11th Cir. 1983) (quoting Andresen v. Maryland, 427 U.S. 463, 480 (1976)). "'The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another.'" Stanford, 379 U.S. at 485 (quoting Marron v. United States, 275 U.S. 192, 196 (1927)). "'As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.'" Id. at 485 (quoting Marron, 275 U.S. at 196). The description of the things to be seized is valid if it is "as specific as the circumstances and the nature of the activity under investigation permit."[16] United States v. Blum, 753 F.2d 999, 1001 (11th Cir. 1985) (citing United States v. Wuagneux, 683 F.2d 1343, 1349 (11th Cir. 1982)). "It is settled law that generic classifications in a warrant are acceptable only when a more precise description is not possible." United States v. Bright, 630 F.2d 804, 812 (5th Cir. 1980).[17] "A warrant which fails to sufficiently particularize the place to be searched or the things to be seized is unconstitutionally over broad." United States v. Travers, 233 F.3d 1327, 1329 (11th Cir. 2000) (citation omitted). However, "elaborate specificity in a warrant is unnecessary" to satisfy the particularity requirement. United States v. Peagler, 847 F.2d 756, 757 (11th Cir. 1988).

"By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the [particularity] requirement ensures that the search will be

---

[16]    "Specificity has two aspects: particularity and breadth. Particularity is the requirement that the warrant must clearly state what is sought. Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based." United States v. Hill, 459 F.3d 966, 973 (9th Cir. 2006) (citing United States v. Towne, 997 F.2d 537, 544 (9th Cir. 1993)).

[17]    In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." Maryland v. Garrison, 480 U.S. 79, 84 (1987). "Thus, the scope of a lawful search is defined by the object of the search and the places in which there is probable cause to believe that it may be found." Id. (internal quotation and citation omitted).

Here, Defendant argues the warrant lacked particularity because it was not limited by reference to the alleged crime and/or search methodology to confine the scope of the computer searches. Motion at 20-36. Defendant argues only four of the twelve numbered paragraphs in the warrant were limited by reference to child pornography, while at least seven of the numbered paragraphs "permitted the government to go on a fishing expedition through every nook and cranny of Defendant's home, seize much of the property, and conduct a boundless search of Defendant's seized property." Id. at 21-22.

Defendant essentially ignores the language immediately preceding the command to seize and search the listed items, in which the following findings were made:

> [there is] probable cause that a computer or other digital device capable of accessing the internet . . . was knowingly used as an instrumentality of a crime and contains evidence relevant to proving a violation of the following Felony laws, to wit: **847.0135(2), Florida Statutes,** prohibiting possession of child pornography under the: "Computer Pornography and Child Exploitation Prevention Act," and **827.071, Florida Statutes,** prohibiting the sexual performance of a child and the creation, possession or promotion of an image of such conduct . . . .

Gov.'s Ex. 2 at 2 (emphasis in original). The most logical reading of these findings, together with the immediately following command to seize and search the listed items, is that the Detectives were authorized to seize and search the listed items for evidence of violations of sections 847.0135(2) and 827.071 of the Florida Statutes. The warrant specifically referred to section 847.0135 as the "Computer Pornography and Child Exploitation

-15-

Prevention Act," and it stated that sections 847.0135(2) and 827.071 prohibit (among other things not listed in the warrant) the possession, creation, or promotion of child pornography. Gov.'s Ex. 2 at 2.

The warrant then listed all of the items to be seized and searched, and five of the twelve numbered items in the warrant explicitly reference child pornography or the sexual exploitation of children:

3. Computer storage media and the digital content to include but not limited to floppy disks, flash drives, thumb drives, hard drives, tapes, DVD disks, CD-ROM disks or other magnetic, optical or mechanical storage which can be accessed by computers to store or retrieve data or images of child pornography.

8. Correspondence or other documents (whether digital or written) pertaining to the possession, receipt, origin or distribution of images involving the sexual exploitation of children.

9. Correspondence or other documents (whether digital or written) exhibiting an interest or the intent to sexually exploit children and to identify a particular users of the materials or contraband and any data or text which tends to prove the identity of the computer user at a time that may be relevant to prove the possession or distribution of child pornography or the sexual exploitation of children. Items may include, but are not limited to, pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, and tape recordings, "trophies," grooming aids or other items demonstrating an interest in the exploitation of children.

10. Items that would tend to establish ownership or use of computers and ownership or use of any Internet service accounts accessed to obtain child pornography to include credit card bills, telephone bills, correspondence and other identification documents.

12. Data maintained on the computer, or computer related storage devices such as floppy diskettes, tape backups, computer printouts, and "zip" drive diskettes, in particular, data in the form of images and/or videos and any accompanying text associated with those images, and/or log files recording the transmission or storage of images, as they relate to violations of Florida law cited herein as related to the possession and distribution of child pornography.

Id. at 2-3 (emphasis added).

Although not every numbered item in the warrant contained a reference to child pornography or child exploitation, it is abundantly clear that the Detectives were permitted to seize and search the listed items for evidence of possession, creation, or promotion of child pornography and for evidence of child exploitation. The scope of the warrant was restricted to a search for evidence of child pornography-related crimes and did not permit a free-ranging search. Cf. United States v. Rosa, 626 F.3d 56, 62 (2d Cir. 2010) ("The warrant was defective in failing to link the items to be searched and seized to the suspected criminal activity – i.e., any and all electronic equipment potentially used in connection with the production or storage of child pornography and any and all digital files and images relating to child pornography contained therein – and thereby lacked meaningful parameters on an otherwise limitless search of Rosa's electronic media."); United States v. George, 975 F.2d 72, 76 (2d Cir. 1992) ("Mere reference to 'evidence' of . . . general criminal activity provides no readily ascertainable guidelines for the executing officers as to what items to seize. . . . [A]uthorization to search for 'evidence of a crime,' that is to say, any crime, is so broad as to constitute a general warrant."). The warrant did not authorize a search for evidence of general criminal activity. The fact that some of the specific numbered items in the warrant did not reference child pornography or child exploitation is unremarkable under the circumstances, especially when the numbered paragraphs are read in conjunction with the findings in the warrant that preceded the list of items to be seized and searched.

With regard to the computer-related items that the warrant permitted to be seized and searched, federal courts applying a reasonableness analysis on a case-by-case basis "have rejected most particularity challenges to warrants authorizing the seizure and search of entire personal or business computers." United States v. Richards, 659 F.3d 527, 539 (6th

Cir. 2011) (collecting cases).[18] This is in recognition of the unique challenges posed by computer searches:

> Unlike warrants seeking readily identifiable evidence such as narcotics or firearms, an onsite search of a computer for the evidence sought by a warrant is not practical or even possible in some instances. See Guest v. Leis, 255 F.3d 325, 335 (6th Cir. 2001) (discussing cases that permitted taking computers off site for forensic searches and explaining that "'[b]ecause of the technical difficulties of conducting a computer search in a suspect's home, the seizure of the computers, including their content, was reasonable in these cases to allow police to locate the offending files'"). Computers store millions of documents, and as some courts have recognized, the onsite search (and accompanying occupation to conduct such a search), might be more off putting to an individual than the seizure of a computer for an off-site determination as to whether it stores any information that falls within the scope of the warrant.

United States v. Metter, 860 F. Supp. 2d 205, 213 (E.D.N.Y. 2012). In light of the unique challenges posed by computer searches, here, the warrant did not lack particularity and was not overbroad because it permitted the seizure of all "computer hardware," "computer input and output devices" and "computer storage media" for off-site analysis.

Further, the warrant did not lack particularity due to the absence of a computer search protocol or methodology. See Richards, 659 F.3d at 538 ("[G]iven the unique problem encountered in computer searches, and the practical difficulties inherent in implementing universal search methodologies, the majority of federal courts have eschewed

---

[18] See, e.g., United States v. Sherman, 372 F. App'x 668, 676 (8th Cir. 2010) ("The search warrant necessarily needed to include all computer equipment and systems to effectively allow law enforcement to recognize and seize the materials described." (quotations and citation omitted)); United States v. Grimmett, 439 F.3d 1263, 1270 (10th Cir. 2006) (upholding search warrant that authorized the search of "'any [computer] equipment' that can create or display computer data" and "encompassed any and all computer software" (quotations and citation omitted); United States v. Upham, 168 F.3d 532, 535 (1st Cir.1999) ("As a practical matter, the seizure and subsequent off-premises search of the computer and all available disks was about the narrowest definable search and seizure reasonably likely to obtain the images. A sufficient chance of finding some needles in the computer haystack was established by the probable-cause showing in the warrant application; and a search of a computer and co-located disks is not inherently more intrusive than the physical search of an entire house for a weapon or drugs. We conclude . . . that the first paragraph [of the warrant, authorizing the seizure of 'any and all computer software and hardware, . . . computer disks, disk drives . . .'] was not constitutionally overbroad.").

the use of a specific search protocol . . ."); United States v. Burgess, 576 F.3d 1078, 1093-94 (10th Cir. 2009) ("It is unrealistic to expect a warrant to prospectively restrict the scope of a search by directory, filename or extension or to attempt to structure search methods – that process must remain dynamic. . . . [I]t is folly for a search warrant to attempt to structure the mechanics of the search and a warrant imposing such limits would unduly restrict legitimate search objectives."); United States v. Khanani, 502 F.3d 1281, 1290 (11th Cir. 2007) (rejecting defendants' argument that "the lack of a written 'search protocol' required the district court to suppress all evidence agents seized as a result of the search of the defendants' computers"); United States v. Brooks, 427 F.3d 1246, 1251 (10th Cir. 2005) ("This court has never required warrants to contain a particularized computer search strategy."); United States v. Maali, 346 F. Supp. 2d 1226, 1245 (M.D. Fla. 2004) ("[T]he lack of a detailed computer 'search strategy' does not render the warrant deficient as to the search and seizure of computers.").[19]

The particularity requirement of the Fourth Amendment was satisfied here with regard to the computer-related items because the warrant identified the types of property authorized to be seized and indicated the crimes involved for which evidence was sought. Cf. United States v. Riccardi, 405 F.3d 852, 862-63 (10th Cir. 2005) ("Our case law therefore suggests that warrants for computer searches must affirmatively limit the search to evidence of specific federal crimes or specific types of materials. The warrant in this case

---

[19]     Defendant relies in part on a case from the Western District of Washington in which the magistrate judge denied the government's application for a warrant to seize "any computers or digital devices" that may be located at the defendant's residence to search for "evidence relating to the crimes of copyright infringement or trafficking in counterfeit goods" as overbroad because the supporting affidavit contained no reference to a search filter term and no promise to foreswear reliance on the plain view doctrine. In re United States of America's Application for a Search Warrant to Seize and Search Electronic Devices from Edward Cunnius, 770 F. Supp. 2d 1138, 1139, 1141, 1152 (W.D. Wash. 2011). In light of the case law previously cited, in which the overwhelming majority of courts have upheld search warrants similar to the one in this case, the undersigned declines to follow the reasoning in In re United States of America's Application.

was not limited to any particular files, or to any particular federal crime. . . . By its terms, the warrant thus permitted the officers to search for anything – from child pornography to tax returns to private correspondence." (internal citations omitted)). The warrant in this case limited the search to computer equipment, digital storage devices, and accessories that could contain contraband and evidence linked to the child pornography offenses specified in the warrant. See United States v. Gabel, No. 10-60168, 2010 WL 3927697, at *10 (S.D. Fla. Sept. 16, 2010) (unpublished report and recommendation) (holding search warrant satisfied particularity requirement when it limited search to computers, digital storage devices, accessories, and other materials that could contain child pornography), adopted, 2010 WL 3894134 (Oct. 4, 2010) (unpublished), aff'd, 470 F. App'x 853 (11th Cir. 2012). The warrant supplied enough information "to guide and control the agent's judgment in selecting what to take." Upham, 168 F.3d at 535. The search was carried out in a controlled manner, not in flagrant disregard for the limitations of the warrant. See Richards, 659 F.3d at 541-42 (holding warrant that authorized search of computer servers for evidence of child pornography was not unconstitutionally overbroad and considering the fact that there was no actual claim that the search process was abused by the federal agents); Grimmett, 439 F.3d at 1270 ("There is no evidence of exploratory rummaging through files, or inadvertent discoveries. No wholesale searching occurred here, despite the broad authority the warrant may have granted." (internal citations omitted)).

The warrant also authorized the search for and seizure of items "demonstrating an interest in the exploitation of children" that may or may not have been stored in a computer. Gov.'s Ex. 2 at 3 ¶ 9. Those items included "pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, and tape recordings, 'trophies,' [and] grooming aids[.]" Id.; see also id. at 3 ¶ 8 (listing "[c]orrespondence or other

documents (whether digital or written) pertaining to the possession, receipt, origin or distribution of images involving the sexual exploitation of children"). The Detectives, however, explained in the affidavit their basis for seeking to search for and seize those types of items:

> [B]ased upon [the Detectives'] knowledge, experience, and training in child exploitation and child pornography investigations, there are certain characteristics common to many individuals involved in the receipt and collection of child pornography. These individuals who have an interest in child pornography often possess and maintain "hard copies" of child pornographic material such as pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. These individuals typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and video tapes for many years, and rarely, if ever, dispose of these materials.

Gov.'s Ex. 1 at 15. Defendant does not challenge whether this explanation amounted to sufficient probable cause to search for and seize those items. In light of the information contained in the affidavit that was presented to the issuing judge, the authorization to search for those items does not make the warrant overbroad or insufficiently particular.[20]

Nor does the fact that non-contraband items contained within the computers (such as bank statements, professional records, personal photographs and music) were also subject to seizure. Again, federal courts have consistently recognized that computer searches pose unique challenges that may result in "some innocuous documents [being] examined, at least cursorily in order to determine whether they are, in fact, among those

---

[20] Courts have also upheld the seizure of "[i]tems that would tend to show dominion and control of the property or premises searched" (numbered paragraph 11 in the instant warrant). See United States v. Horn, 187 F.3d 781, 787 (8th Cir. 1999) ("[T]he words '[r]ecords, documents, receipts, keys, or other objects showing access to, and control of, the residence" were sufficiently particular to preclude the exercise of any illegal discretion by the executing officers.").

papers authorized to be seized." <u>Andersen v. Maryland</u>, 427 U.S. 463, 482 n.11 (1976). The United States District Court for the Eastern District of New York explained:

> Computers and electronic information present a more complex situation, given the extraordinary number of documents a computer can contain and store and the owner's ability to password protect and/or encrypt files, documents, and electronic communications. As a result, the principle of permitting law enforcement some flexibility or latitude in reviewing paper documents just described, has been extended to computerized or electronic evidence. Courts have applied the principles recognized in <u>Andresen</u> in analyzing the method used by the police in searching computers and have afforded them leeway in searching computers for incriminating evidence within the scope of materials specified in the warrant. Thus, courts developed a more flexible approach to the execution of search warrants for electronic evidence, holding the government to a standard of reasonableness.

<u>Metter</u>, 860 F. Supp. 2d at 213-14 (quotations, citations, and parentheticals omitted); <u>see also</u> <u>United States v. Riley</u>, 906 F.2d 841, 845 (2d Cir. 1990) ("It is true that a warrant authorizing seizure of records of criminal activity permits officers to examine many papers in a suspect's possession to determine if they are within the described category. But allowing some latitude in this regard simply recognizes the reality that few people keep documents of their criminal transactions in a folder marked 'drug records.'"); <u>United States v. Santarelli</u>, 778 F.2d 609, 615-16 (11th Cir. 1985) (finding search reasonable even though agents removed a large number of documents that were unrelated to loansharking activity because "the agents were entitled to examine each document in the bedroom or in the filing cabinet to determine whether it constituted evidence they were entitled to seize under the warrant"); <u>Maali</u>, 346 F. Supp. 2d at 1247 ("The fact that many records other than those responsive to a search warrant are likely to be stored on computers does not render seizure of computers for offsite searching impermissible.").

For the foregoing reasons, the undersigned finds the warrant was neither insufficiently particular nor impermissibly overbroad.

**B. Whether the Warrant Was Executed in an Unreasonable Manner**

Defendant argues the execution of the search warrant was unreasonable because government agents seized and retained "[f]or five and one-half months" non-contraband items that fell outside the warrant's scope, including computer equipment that contained no evidence relating to child pornography. Motion at 13. Defendant relies in part on two relatively recent decisions of the Eleventh Circuit to argue that the delay unreasonably infringed on Defendant's possessory interests protected by the Fourth Amendment. See id. at 14-16 (citing, inter alia, United States v. Laist, 702 F.3d 608 (11th Cir. 2012); United States v. Mitchell, 565 F.3d 1347 (11th Cir. 2009)).

In Mitchell, two agents seized the hard drive of the defendant's computer, acting on probable cause that the computer contained images of child pornography. Mitchell, 565 F.3d at 1349. Twenty-one days after the initial seizure of the hard drive, one of the agents applied for and received a warrant to search the computer.[21] Id. The Court found the government had not provided adequate justification for the delay and rejected the argument that there was no harm in the delay in applying for the search warrant:

> The purpose of securing a search warrant soon after a suspect is dispossessed of a closed container reasonably believed to contain contraband is to ensure its prompt return should the search reveal no such incriminating evidence, for in that event the government would be obligated to return the container (unless it had some other evidentiary value). In the ordinary case, the sooner the warrant issues, the sooner the property owner's possessory rights can be restored if the search reveals nothing incriminating. If anything, this consideration applies with even greater force to the hard drive of a computer, which is the digital equivalent of its owner's home, capable of holding a universe of private information.

---

[21] Three days after the seizure, one of the agents in Mitchell left town to attend a two-week training course. Mitchell, 565 F.3d at 1349. He did not apply for the search warrant until after his return. Id. The agent testified he did not feel any urgency to apply for the warrant before he left town because the defendant had admitted the hard drive contained child pornography. Id. at 1351.

Id. at 1352 (quotations and citations omitted). The Eleventh Circuit explained that an otherwise lawful seizure can violate the Fourth Amendment and infringe upon an owner's possessory interests if the police act with unreasonable delay in securing a search warrant. Id. at 1350. The Court stated that the reasonableness of the delay should be determined in light of all the facts and circumstances on a case-by-case basis and should reflect a careful balancing of governmental and private interests. Id. at 1350-51.

In Laist, FBI agents conducted a "knock and talk" to interview the defendant and request his consent to seize and search his computer. Laist, 702 F.3d at 610. The defendant admitted there was child pornography on his computer, signed consent forms authorizing the search and seizure of his computer and hard drives, and he accessed the computer to show the agents an image that appeared to be child pornography. Id. at 610-11. Before seizing the computer, the agents allowed the defendant to copy some school documents onto an external hard drive. Id. at 611. One week later, the defendant's attorney sent a letter to the FBI revoking the defendant's consent. Id. Twenty-five days after receipt of the letter revoking the defendant's consent, the agents submitted an application for a search warrant to a magistrate judge, who issued the warrant six days later. Id. at 611-12. The Eleventh Circuit found the twenty-five day delay in applying for the warrant was reasonable under the circumstances. Id. at 616-17. The Court explained the defendant's possessory interest was diminished because he had been afforded the opportunity to remove the files he needed for school, and he had admitted the presence of contraband on his computer. Id. at 616. The Court stated that "[t]he government's efforts were sufficiently diligent to pass muster under the Fourth Amendment" under the totality of the circumstances considering that the government had submitted a detailed affidavit that contained valuable

information and took time to draft and edit, and the agents were "extremely busy" with other matters. Id. at 617.

In both of these cases, agents seized computer media without a warrant and held it for a period of time before eventually obtaining a warrant to search the contents. Because the Detectives in this case seized Defendant's computers pursuant to a valid search warrant, Mitchell and Laist are distinguishable and inapposite. Here, the undersigned finds no unreasonable conduct in the Government's execution of the warrant. Less than five months passed between the seizure of the computers and related media and the completion of the forensic examination. Detective Snyder testified that although he was not sure of the reason for the approximate five-month period in this particular case, the examiners have a "back-load" of examinations to do because "mutiple cases . . . come in constantly[.]" Tr. at 40. Detective Snyder testified the amount of time it takes to complete a computer forensic examination can vary depending on "several factors," including "the examiner's caseload[.]" Tr. at 40. There is no evidence that the Government was not diligent in its efforts to complete the forensic examination of Defendant's computers and media. See United States v. Lovvorn, No. 1:11-cr-208-WKW-TFM, 2012 WL 3743975, at *6 (M.D. Ala. Apr. 24, 2012) (unpublished) (finding the nineteen month delay between the seizure of a computer and completion of the forensic examination was reasonably attributable to a "backlog of cases" and noting there was no evidence that the defendant sought to have his property returned or was prejudiced in any way). Further, the undersigned can find no case law to support Defendant's argument that the Government's retention of the non-contraband items between the completion of the forensic examination and Defendant's request for their return justifies suppression of lawfully-seized evidence. See United States v. Foster, 100 F.3d 846, 852 (10th Cir. 1996) ("[T]he extreme remedy of blanket suppression should only be imposed

in the most 'extraordinary' of cases."). The Government agreed to return all non-contraband items upon Defendant's request and pursuant to the Court's Orders, and much of the delay in the completion of such return can be attributed to attempting to figure out the logistics of how to do so.

For the foregoing reasons, the undersigned determines that the warrant was not executed in an unreasonable manner. In addition, suppression is not an appropriate remedy for the Government's retention of non-contraband items.

## C. Whether the Government Agents Acted in Good Faith

Defendant argues the warrant in this case was facially invalid and no reasonable agent could have presumed it to be valid. Motion at 39-41. In support, Defendant states in part that "it should have been apparent to a government-trained agent that a warrant authorizing the search of 'any and all computer equipment used to collect . . . data' (item 1) without any reference to a crime lacked the requisite specificity." Id. at 39.

"The good faith exception may be applied to a search conducted pursuant to an overly broad warrant." Travers, 233 F.3d at 1330 (citing United States v. Accardo, 749 F.2d 1477, 1481 (11th Cir. 1985)). When an officer has obtained a search warrant and acted within its scope in good faith, "there is no police illegality and thus nothing to deter." Leon, 468 U.S. at 921. "The officers do not act in objective good faith, however, if the warrant is so overly broad on its face that the executing officers could not reasonably have presumed it to be valid." Travers, 233 F.3d at 1330 (citing Accardo, 749 F.2d at 1481). In determining whether the good-faith exception should apply in a particular case, the "inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Leon, 468 U.S. at 922 n.23.

Here, the undersigned has determined the warrant did not lack particularity and was not overbroad. Even if the Court were to find it so, however, the warrant was not "'so facially deficient – i.e., failing to particularize the place to be searched or the things to be seized – that the executing officers could not have reasonably presumed it to be valid.'" Travers, 233 F.3d at 1330 (quoting Accardo, 749 F.2d at 1481). There is no evidence that the Detectives intentionally deceived the issuing judge or deliberately exceeded the scope of the warrant in the items seized during the search. The warrant indicated there was probable cause to believe that a computer located at Defendant's residence was used to possess, create, or promote child pornography, and it was sufficiently detailed that a reasonable officer would have believed in good faith that the warrant was valid. This is not a situation in which "even a cursory reading of the warrant . . . would have revealed a glaring deficiency that any reasonable police officer would have known was constitutionally fatal." Groh v. Ramirez, 540 U.S. 551, 564 (2004); see Riccardi, 405 F.3d at 863-64 (holding good faith exception applied, even though warrant lacked particularity because it authorized the seizure of all computer equipment and did not reference the alleged crime).

Further, Defendant argues that even if it was not obvious that the warrant was facially invalid, the Detectives did not act in good faith because the Government unreasonably executed the warrant by failing to return any of Defendant's computers and hard drives after making duplicate images of them. Motion at 40. As discussed above, the undersigned finds the Government's execution of the warrant was reasonable. The undersigned does not find any evidence that the officers intentionally delayed the investigation or acted in bad faith.

For the foregoing reasons and in the alternative, the Leon good faith doctrine applies and suppression is not the remedy for any Fourth Amendment violation.

## V. Conclusion

The search warrant did not lack particularity and was not unconstitutionally overbroad. In addition, the law enforcement officers did not execute it in an unreasonable manner. Alternatively, the officers relied in good faith on the warrant and suppression is not appropriate under <u>Leon</u>. After due consideration, it is

**RECOMMENDED**:

That Defendant Brooks' Motion to Suppress (Doc. No. 39) be **DENIED**.

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida on October 18, 2013.

*James R. Klindt*

**JAMES R. KLINDT**
United States Magistrate Judge

kaw
Copies to:

Honorable Marcia Morales Howard
United States District Judge

Assistant U. S. Attorney (Brown)
William J. Sheppard, Esquire
Elizabeth Louise White, Esquire
Bryan E. DeMaggio, Esquire
Matthew R. Kachergus, Esquire